# KENT COUNTY.

ISRAEL STONE *et ux. vs.* PARDON S. PECKHAM.

In equity proceedings the question at issue between the complainant and the respondent re-
solved itself upon the proof into whether the complainant was entitled to equitable relief
for the inundation of his land and of a private pass-way connecting his land with a high-
way which was caused by a dam built by the respondent, and also whether the complain-
ant was entitled to equitable relief for the interruption thus caused to his access to the
highway. It appearing that a new and more convenient highway than the old one had
been laid out over and along the dam, and also that the slope of the dam covered part
of the old highway, and also that the location of the old highway had never been
legally changed by the town authorities :

*Held,* that the dam was a nuisance in law but not in fact.

*Held,* further, that as the public received no detriment, the complainant could only have
relief for his individual injury.

*Held,* further, that the complainant was entitled to relief for the inundation.

*Held,* further, that the complainant would be sufficiently relieved by an enlargement of
the water aperture of the dam.

And it appearing that raising the grade of the private pass-way would give the com-
plainant convenient access to the new highway :

*Held,* that the interruption to the complainant's access to the highway was capable of
pecuniary compensation, and therefore remediable at law.

*Held,* further, that the decree should be without prejudice to the complainant's legal rem-
edy unless the parties preferred to have a master ascertain the complainant's damage.

BILL IN EQUITY praying for the removal of certain dams and
for an injunction.

*Providence, January* 19, 1878. DURFEE, C. J. The plain-
tiffs, who are husband and wife, own in the right of the wife a
tract of land in Coventry, in this State, through and over which
a river, known as Washington River, flows in an easterly direc-
tion. After passing from their land, the river flows along by the
side of and through the defendant's land and then between the
defendant's land and a jog or reëntering piece of the plaintiffs'
land, and thence under or across a highway leading from the
town-house in Coventry to the Central Factory, so called, the
plaintiffs' reëntering piece aforesaid being bounded easterly on
the highway. The plaintiffs own and claim to have long owned
a dam, water-mill, or mill privilege, on the river on their land
above the defendant, and, by virtue of their ownership, are enti-
tled to have the water flow over and away from the dam or priv-

ilege without obstruction. In 1866 the defendant erected two dams on the river, one a temporary dam, four or five rods below the plaintiffs' dam or privilege; the other, intended to be permanent, about forty rods below, at and partly on the highway, — the higher dam being erected merely to hold the water in check while the lower was building. The effect was to flow the water back on the privilege belonging to the plaintiffs. They originally commenced this suit to have the defendant enjoined and decreed to remove his dams. They have established their right, and have obliged the defendant to desist from flowing the water back upon their privilege, though as yet no final decree has been entered in the case. But the dam at the highway still remains, being pierced with an opening or gateway for the run of the river. The plaintiffs complain that this opening is not large enough, but obstructs the river so that at times it floods their lot and covers a pass-way over it, being, as they claim, the only pass-way from their land to the highway. They have filed a supplemental bill, in which they set this forth as a further ground of relief, and in which they also set forth, as a further ground of relief, that they own the soil of the highway where the dam is built, subject to the public right of travel; and that the raising of the highway by or for the dam obstructs or cuts off their access thereto over the pass-way aforesaid. The case is before us now upon the question whether the plaintiffs are relievable upon these further grounds.

The defendant, in his answer to the supplemental bill, denies that the title to the soil in the highway is in the plaintiffs, and asserts that it is in the town of Coventry. In proof of this he produces a copy of a deed, dated March 24, 1750. This deed, which is executed by several persons, conveys the land to the town "for a driftway by gates and bars forever, to the town's use, benefit, and behoof forever, for the use of passing and repassing in at all times hereafter." The deed purports to be made in consideration of the benefit of the driftway to the grantors and the other inhabitants of the town, and contains a covenant warranting the granted premises to the said town for the use abovesaid." The validity of this deed is not questioned. It conveys the land in fee to the town for certain purposes, and therefore it may be questioned whether, after its execution, there

was any interest remaining in the grantors, which would pass by deed to subsequent grantees. But if there was, we do not find any deed which would carry it to the plaintiffs beyond the centre of the way. Now, the testimony shows that the main body of the dam or structure erected by the defendant lies beyond the centre of the way, and that it occupies the half of the way towards the plaintiffs only in part, and only by the lower or diminishing slope of the embankment. The encroachment, if any injury at all to any interest which the plaintiffs have in the soil of the highway, must be exceedingly small. There is no evidence that it is not a benefit. If the plaintiffs have, as they claim, a legal interest in the highway, then the legal remedy is adequate. And at any rate a complete removal of the dam is unnecessary.

The question then comes to this, namely, whether the plaintiffs are entitled to equitable relief on account of the flooding of their land and pass-way, and of the interruption of their access to the highway. It will be observed that the soil of the highway was originally conveyed to the town of Coventry rather for the purposes of a town-way than of a public highway ; but it is not denied that, before the building of the dam, it had, by use or otherwise, become, in the fullest sense of the word, a public highway. The defendant, in his answer to the supplemental bill, sets forth that he built the dam in pursuance of an agreement with the town council of the town of Coventry, and that, under the agreement, he raised and levelled the road which previously had been greatly depressed at the river, putting in a new bridge and all necessary mason work, at an expense of some five thousand dollars, the structure being so contrived as to constitute a new highway, which is a great improvement upon the old. We think there is no reason to doubt that the new highway thus provided is better than the old. It appears, however, that while it does not fully occupy the place of the old, it yet so far covers the old, by the slope of its bank, as to render it practically useless. The plaintiffs therefore claim that the structure is a nuisance or obstruction in the highway, and that it is not and cannot be legalized by any mere agreement with the town council. We are of the opinion that this view is correct. A town council cannot legalize a public nuisance. A town council may, it is true, change

the location of a highway, or may abandon it wholly or in part; but this it can do only in a particular manner, which has not been pursued in the case at bar. But it does not follow, because the dam is technically a nuisance, that a court of equity will interfere in behalf of the plaintiffs. A court of equity will ordinarily leave a party who is injured by such a nuisance to his remedy at common law, and will interfere only where the injury is such that the common law remedy is inadequate. The injuries complained of are of two kinds: First, there is the flooding of the land and pass-way. This is a great and continuous injury, and one for which we think it may be fairly said the common law affords no adequate remedy. A court of equity, therefore, may well take cognizance of it. The plaintiffs claim that the proper remedy is the complete removal of the dam from the river and highway. If the dam were in fact as well as in law an unmitigated nuisance, it might be that its complete removal would be the proper remedy. But from the dam as now used the public receives no detriment. On the contrary, we have no doubt that the new road formed by the dam is decidedly superior to the old, which has been displaced by it. The removal would be an injury to the public; for it would not only subject the public to the attendant inconveniences, but it would also give a worse road. The plaintiffs are entitled to relief only in so far as they are *individually* injured. We think, therefore, that we shall go far enough in this respect if we require the defendant to widen the aperture in his dam so as to permit the full flow of the river, and thus relieve the land and pass-way from inundation. We will grant the plaintiffs relief to that extent.

The other injury of which the plaintiffs complain is the interruption of their access to the highway. This results from the fact that the old highway is occupied in part by the dam and embankment, and so rendered unsuitable for travel, and the new highway is raised some ten or twelve feet above the level of the old, and as much above the level of the pass-way, by which the plaintiffs entered the old. The injury is not irreparable. The remedy is for the plaintiffs to extend the slope of the embankment in front of their pass-way, so that it will afford them an easy ascent to the new highway. They can easily do this when the land is relieved from the overflow of the river. The injury,

therefore, admits of pecuniary compensation, and is remediable by an action at law for damages. We will enter the decree without prejudice to the right to bring such an action, unless the parties prefer to have the damages ascertained by a master in this suit.

In conclusion, we remark that we have not considered the question whether the defendant would be entitled to maintain his dam and flow the land and pass-way in case he were still intending to erect a mill, for we understand such an intention is no longer entertained.

*William H. Potter*, & *Dexter B. Potter*, for complainants.
*Ashley* & *Colwell*, for respondent.